```
                                    ┌─────────────────────────────────────┐
                                    │              FILED                  │
 1                                  │  ┌───────────────────────────────┐  │
                                    │  │        MAY − 8 2012            │  │
 2                                  │  └───────────────────────────────┘  │
                                    │    CLERK, U.S. DISTRICT COURT        │
 3                                  │ SOUTHERN DISTRICT OF CALIFORNIA      │
                                    │ BY                        DEPUTY     │
 4                                  └─────────────────────────────────────┘
```

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JEFFREY SUELLENTROP, et al.,              CASE NO. 11-CV-2274 BEN (BGS)

12                            Plaintiffs,      **ORDER GRANTING MOTION TO**
                vs.                            **DISMISS**
13
                                               [Docket No. 3]
14   COUNTRYWIDE BANK FDB, et al.,

15                            Defendants.

16

17          Presently before the Court is Defendant Bank of America, N.A.'s Motion to Dismiss. (Docket

18   No. 3.) For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

19                                      **BACKGROUND**

20          Plaintiffs Jeffrey and Amanda Suellentrop are residents of the County of San Diego. (Compl.

21   ¶ 12.) Plaintiffs own a residence located at 17329 Eagle Canyon Way, San Diego, CA, 92127

22   ("Property"). (*Id.* ¶ 18.) On January 25, 2008, Plaintiffs obtained two loans from Countrywide Bank

23   FSB, totaling $748,999.[1] (*Id.* ¶ 19, Exhs. A & D.) On December 9, 2009, Plaintiffs modified the

24   loans. (*Id.* ¶ 20.) Plaintiffs allege that "the modifications were really 'forbearance agreements'

25   disguised as modification agreements with higher monthly payments on loans that were already

26

27   ─────────────────────

28        [1] Although Plaintiffs state that the loans were obtained on April 10, 2007 and totaled
     $790,000 (Compl. ¶ 19), the attached Notes to their complaint indicate that the loans were obtained
     on January 25, 2008 and totaled $748,999.

1  unaffordable." (*Id.*) One month later, Bank of America, successor in interest to Countrywide Bank

2  FSB, sent a three-month trial plan with payments of $4,327 to Plaintiffs. (*Id.* ¶ 21.) Plaintiffs allege

3  that "[t]his amount was higher than the amount as agreed in the loan modification for the first loan and

4  therefore of no benefit or relief for the Plaintiffs." (*Id.*)

5      Subsequently, the value of Plaintiffs' Property dropped significantly. (*Id.* ¶ 22.) After

6  conducting research, Plaintiffs "discovered that their loans had numerous violations of the Federal

7  Truth in Lending Act ('TILA') and Federal Reserve Regulation Z, and determined that many of the

8  disclosures did not comply with California and Federal law." (*Id.* ¶¶ 22-23.)

9      On September 30, 2011, Plaintiffs filed the instant action. The Complaint asserts: (1)

10  intentional misrepresentation against Countrywide Bank; (2) breach of the covenant of good faith and

11  fair dealing against all defendants; (3) declaratory relief against all defendants; (4) quiet title against

12  all defendants; (5) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1666j, against

13  all defendants; (6) violations of the California Business and Professions Code § 17200 *et seq.* against

14  all defendants; (7) fraud against all defendants; and (8) accounting against all defendants.

15

16      Presently before the Court is a Motion to Dismiss by Defendant Bank of America, N.A., as

17  successor in interest to Countrywide Bank FSB and as erroneously sued as CHL Mortgage Pass-

18  Through Trust 2008-1 Countrywide Home Loans, a.k.a. Bank of America. Being fully briefed, the

19  Court finds the Motion suitable for determination on the papers without oral argument, pursuant to

20  Civil Local Rule 7.1.d.1.

21                          **DISCUSSION**

22      Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual

23  allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P.

24  12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 129 S.

25  Ct. 1937, 1949 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer

26  possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the

27  complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal

28  evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which

1  relief may be granted. *Twombly*, 550 U.S. at 556.

2  Defendant seeks to dismiss all of Plaintiffs' claims. Plaintiffs do not oppose Defendant's

3  motion to dismiss the second, fourth, or eighth claims. Accordingly, the second, fourth, and eighth

4  claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs oppose Defendant's motion to dismiss

5  the first, third, fifth, sixth, and seventh claims. Each of these claims will be addressed in turn.

6  

7  

## I.   FIRST CLAIM: INTENTIONAL MISREPRESENTATION AND SEVENTH CLAIM: FRAUD

8  In the first claim for intentional misrepresentation, Plaintiffs allege that Defendant "defrauded

9  Plaintiffs by concealing or suppressing . . . material facts from Plaintiffs." (Compl. ¶ 29.) Specifically,

10  Plaintiffs allege that Defendant understated the amount financed, under disclosed the finance charges,

11  failed to assess Plaintiffs' ability to repay the loan, put the Plaintiffs into a loan that was reasonably

12  foreseeable to default, and were only interested in obtaining fees and were not concerned with the

13  long-term viability of the loan. (*Id.*) In the seventh claim for fraud, Plaintiffs allege that "the

14  representations made to Plaintiffs to induce Plaintiffs to enter the loan were false and were made with

15  the intent to harm Plaintiffs and profit from the misrepresentation." (*Id.* ¶ 70.) Defendant argues that

16  Plaintiffs' claims are barred by the applicable statute of limitations. As this issue is dispositive, the

17  parties' remaining arguments will not be addressed.

18  "An action for relief on the ground of fraud or mistake" must be brought within three years

19  after the aggrieved party discovers the fraud. CAL. CODE CIV. PROC. 338(d); *Winn v. McCulloch*

20  *Corp.*, 60 Cal. App. 3d 663, 672 (2d Dist. 1976). Because a plaintiff has a duty to exercise diligence

21  so as to discover facts constituting fraud, a fraud claim accrues "when the plaintiff has notice or

22  information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain

23  knowledge from sources open to his investigation." *Lee v. Escrow Consultants, Inc.*, 210 Cal. App.

24  3d 915, 920 (2d Dist. 1989). "[T]he plaintiff must *plead and prove the facts* showing: (a) Lack of

25  knowledge. (b) Lack of means of obtaining knowledge (in the exercise of reasonable diligence the

26  facts could not have been discovered at an earlier date). (c) How and when he did actually discover

27  the fraud or mistake." *Id.*

28  Plaintiffs' allegations that Defendant understated the amount financed, under disclosed the

finance charges, failed to assess Plaintiffs' ability to repay the loan, put the Plaintiffs into a loan that

was reasonably foreseeable to default, were only interested in obtaining fees and were not concerned with the long-term viability of the loan, and made false representations to Plaintiffs to induce them to enter into the loan, all appear to relate to the origination of the loans. The loans were originated in January 2008, and Plaintiffs did not file the present action until September 2011. In addition, Plaintiffs do not allege or argue that there was a "[l]ack of means of obtaining knowledge" of the alleged fraud. *See id.* Consequently, the first and seventh claims are barred by the applicable statute of limitations. The first and seventh claims are **DISMISSED WITHOUT PREJUDICE.**

## II.    FIFTH CLAIM: VIOLATION OF TILA

In the fifth claim, Plaintiffs allege that Defendant violated TILA. Specifically, Plaintiffs allege that the loan was given "without regard to repayment ability," in violation of 15 U.S.C. § 1639(h). (Compl. ¶¶ 56, 59.) Plaintiffs also allege that "Defendants' failure to deliver all the material disclosures required by [TILA]" entitles them to rescission under the statute. (*Id.* ¶¶ 60-61.) Defendant argues that any claim under TILA is time-barred. As this issue is dispositive, the parties' remaining arguments will not be addressed.

The statute of limitations for a TILA *damages* claim is "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1039 (C.D. Cal. 2008). The statute of limitations runs from "the date of consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). "Consummation means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Here, Plaintiffs allege that they obtained two loans from Countrywide Bank on January 25, 2008, and modified the loans on December 9, 2009. As Plaintiffs did not file suit until September 2011, Plaintiffs' claim for damages under TILA is barred by the applicable statute of limitations.

A TILA *rescission* claim is subject to a three-year statute of limitations. *See* 15 U.S.C. § 1635(f). As explained above, the date of consummation of the transaction is the date on which the loan is signed. *See* 12 C.F.R. § 226.2(a)(13). Section 1635(f) is an "absolute limitation on rescission actions" which bars any claim filed more than three years after the consummation of the transaction. *King*, 784 F.2d at 913; *see also Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164-65 (9th Cir.

- 4 -

2002). Here, in regards to the loan origination, the statute of limitations began to run on January 25, 2008. As Plaintiffs did not file suit until September 2011, the statute of limitations bars Plaintiffs' TILA claim.

Plaintiffs argue that the running of the three-year statute of limitations began when the loans were modified in December 2009. However, TILA does not apply to the loan modifications. A loan modification agreement is exempt from TILA disclosure requirements when it does not constitute either an extension of new credit or a "refinancing." *See* 12 C.F.R. § 226.20(a)(2) (excluding from the disclosure requirements for "refinancings" "[a] reduction in the annual percentage rate with a corresponding change in the payment schedule"); *see also Beck v. Wells Fargo Bank, Nat'l Ass'n*, No. 11-CV-00663, 2011 WL 6217345, at *3 (N.D. Cal. Dec. 14, 2011) ("Loan modifications and workout agreements do not trigger new TILA obligations."); *Norton-Griffiths v. Wells Fargo Home Mortg.*, No. 10-CV-169, 2011 WL 61609, at *6 (D. Vt. Jan. 4, 2011) (loan modification agreement exempted from TILA disclosure requirements because it did not constitute an extension of new credit or refinancing); *Diamond v. One W. Bank*, No. CV-09-1593, 2010 WL 1742536, at *5 (D. Ariz. Apr. 29, 2010) ("[A] loan modification does not require additional TILA disclosures, particularly where no new monies are advanced."); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 528 (E.D. La. 2009) (holding that where a loan modification agreement does not "completely replace" an earlier mortgage, but rather "amends and supplements" it, the document does "not give rise to disclosure requirements or rescission rights under TILA.").

Here, Plaintiffs allege that "the modifications were really 'forbearance agreements' disguised as modification agreements with higher monthly payments on loans that were already unaffordable." (Compl. ¶ 20.) In regards to the first loan, the loan modification added a total of $59,153.89 to the principal balance, which consisted of $42,063.84 in interest, $1,956.36 in fees, and $15,133.69 in escrow. (*Id.*, Exh. C.) In regards to the second loan, Plaintiffs allege that the loan modification "add[ed] arrears and fees to the loan balance and [did] not modify the original terms of the loan." (*Id.* ¶ 25.) As neither modification constitutes either an extension of new credit or a refinancing, TILA does not apply. Accordingly, Plaintiffs' fifth claim is **DISMISSED WITH PREJUDICE.**

### III. SIXTH CLAIM: VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

In the sixth claim, Plaintiffs allege that Defendant engaged in "unlawful, unfair and fraudulent business practices." (Compl. ¶¶ 64-65.) Specifically, Plaintiffs contend that Defendant understated the amount financed, under disclosed the finance charges, failed to assess Plaintiffs' ability to repay the loan, put the Plaintiffs into a loan that was reasonably foreseeable to default, and were only interested in getting fees and were not concerned with the long-term viability of the loan. (*See id.* ¶ 64.) Defendant argues that Plaintiffs fail to allege facts demonstrating any proscribed business acts or practices. As this issue is dispositive, the parties' remaining arguments will not be addressed.

The Unfair Competition Law ("UCL") prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. First, "[b]y proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). Second, "unfair" conduct must be violative of a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (4th Dist. 2003) (internal quotation marks omitted). Third, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2d Dist. 2009). A UCL claim must be dismissed if the plaintiff has not stated a claim for the predicate acts upon which he bases the claim. *See Gaitan v. Mortg. Elec. Registration Sys.*, No. EDCV 09-1009, 2009 WL 3244729, at *11 (C.D. Cal. Oct. 5, 2009).

In the present action, Plaintiffs have not alleged additional facts in their sixth claim that are not stated in their previous claims. As explained above, Plaintiffs' claims for intentional misrepresentation, fraud, and violation of TILA are time-barred. Accordingly, Plaintiffs cannot state a UCL claim based on these allegations. In addition, Plaintiffs have not alleged any additional facts establishing "unfair" conduct tethered to any specific constitutional, statutory, or regulatory provision, or any conduct likely to deceive members of the public. Accordingly, Plaintiffs' sixth claim is **DISMISSED WITHOUT PREJUDICE.**

## IV.   THIRD CLAIM: DECLARATORY RELIEF

In the third claim, Plaintiffs "request a judicial determination of the parties' rights and duties as is necessary and appropriate at this time under the circumstances, and a declaration as to whether Defendants violated federal and state lending laws, whether Plaintiffs are required to tender proceeds to Defendants, whether Plaintiffs are obligated under the Deed of Trust and, if so, to whom." (Compl. ¶ 46.)

Declaratory relief is proper only where there exists an "actual controversy relating to the legal rights and duties of the respective parties." CAL. CODE CIV. PROC. § 1060. Here, Plaintiffs seek this declaratory relief based on the allegations of wrongdoing contained in Plaintiffs' other claims. (Compl. ¶ 44.) Because Plaintiffs' other claims are being dismissed, the claim for declaratory relief fails as a matter of law. *See The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 607 (1st Dist. 2001). Accordingly, the third claim is **DISMISSED WITHOUT PREJUDICE.**

### CONCLUSION

For the foregoing reasons, the Motion to Dismiss is **GRANTED**. Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth claims are **DISMISSED WITHOUT PREJUDICE.** Plaintiffs' fifth claim is **DISMISSED WITH PREJUDICE.** Plaintiffs are **GRANTED** forty-five (45) days from the date of this Order to file a First Amended Complaint.

**IT IS SO ORDERED.**

DATED: May    , 2012

HON. ROGER T. BENITEZ
United States District Court Judge